And we'll call the next case, Melrose v. Cityof Pittsburgh. Melrose v. Cityof Pittsburgh. Melrose v. Cityof Pittsburgh. Please record. My name is Howard Lehman. I represent Melrose. I would request to reserve three minutes of rebuttal. Yes, that's fine, Mr. Lehman. Thank you. This case involves where Melrose has received occupancy permits for naming rights to buildings, has received them, and then went to change the names. Upon changing the names on the building, they were refused a permit. These names that were issued were SSPP, Caskey Limited, Owen Building, Ramsteiger, and Three Rivers Building. The reason for the distinction, the reason for the naming rights being refused, Your Honor, Can I get your right to that? Yes, yes. It looks like the heart of the matter. Why do you disagree with the Planning Board's decision? With the Zoning Board's decision? With the Zoning Board. The Zoning Board's decision is based on a content, a content neutral, a non-content neutral, is based on the subject, the subjective basis of whether there's a certain degree of advertising to the zoning. Before that, can I ask you, is your challenge to the municipal ordinance a facial challenge or are you challenging the manner in which those ordinances were applied? It's the manner in which it was applied, Your Honor. It was applied in this case differently than other building naming rights. It was applied, other naming rights were given names based on advertising. Part of the ordinance, one of the factors, is the idea that the signs are going to stay in place for an extended, sufficiently long period of time so that you're not just putting signs up and taking them down. The ordinance also, if I remember correctly, requires that the building owner or the primary tenant have control over the signs. Now, did you show or make a showing of any of these factors before? Your Honor, the ordinance did not require any duration. The ordinance doesn't require a duration. The Zoning Administrator and Board required a duration. All the zoning requires is that it be a script on a building, a naming of a building. It is the Zoning Administrator and the, actually, it was the District Court judge that interpreted the Administrator's interpretation. I remember that factor to be evidence of longevity. Yes, longevity was, that was a decision by the Zoning Board Administrator. The ordinance does not require longevity, Your Honor. The ordinance requires that it be a name. Longevity was important to the District Court judge. And because it distinguishes our case from other cases. Wasn't that a factor in the Heinz Field sign? Yes, but there were so many other signs. Your Honor, our own signs. The Owens Building to the Cole Building was transferred after one year. But it wasn't an advertise, I'm sorry. Counsel, go ahead. In answer to Judge Fuentes' question, didn't the Zoning Board in 2001 come up with four criteria to address facilities like the Heinz Field? And isn't longevity one of the criteria that the Zoning Board articulated? The Zoning Board articulated the criterion in its opinion in Heinz Field. That is correct. That opinion was written and determined after both cases were heard, Melrose and Heinz. So it was, in essence, also an opinion as to Melrose. And in Melrose's opinions, in Melrose Board opinions, the Board says that they are making these determinations as a fine line subjectively related to the content of what the degree of advertising is on these signs. My question was what showing did you make of longevity? Your Honor, you made the opposite. Not you, but maybe it was you. The lawyer before the Zoning Board said you could change the name of the building as often as you wanted. It was your building, right? Well, it wasn't our building, Your Honor. We had leases. You had the naming rights. We had the naming rights. That is what is before us. The lawyer representing Melrose stated that they could change the name as often as they wanted, correct? It's the opposite of longevity. Yes, but, Your Honor, longevity, and this comes to the constitutional impairment of this. Longevity could be seen as an aftereffect, just a distinction between Heinz Field and PNC Park and Chevrolet Amphitheater and these buildings. And the reason being is because none of these determinations were made when these were Cassidy Limited, SSPP, Owens Building, and Ram Steiger. No one said a word about longevity. At that point, they were clearly identification signs. That's not it. They are building ID signs. That's what they are. They are not advertising signs. They do advertise. They do advertise. These are naming rights to the building. And that is where RAU is distinguishable. Well, there still characterizes identification signs, perhaps with an advertising component, but they're still identification signs. Correct, and the identification signs were initially approved without any reference to longevity. In fact, the Owens Building was switched after a year to Cole with approval without any objection to longevity. It is only when the name sounded more impalpable, and that's where its content was, impalpable to the zoning board. Didn't the city have an interest to minimize the proliferation of advertising signs within certain districts? The proliferation of advertising signs, unlike RAU, this was not a historic district, and they do have that interest, but in this case, the signs were already up. They were non – in this case, they were signs that were – You went from identification to advertise. No, we went from identification to identification. We just changed the names, and that's what the applications say. You think WeHireNurses.com is not advertising? We're not saying it doesn't advertise. It's not an advertising sign. My client likes to give me an example, and it's really – if you go down the street and you see three golden arches, and one could be an advertising sign, and one could be an on-site tenant, like a McDonald's, and one could be a naming sign of the building. And it's clear that they do advertise. I mean, Hinesville would have no reason to be related with the Steelers, nor would PNC Park have any reason to be related with – They're very different from what you were doing. The sign is going to be there for 15 or 20 years, and that's a lot different than what you showed in this case. I mean, you were given a chance to show that your signs were going to stay up there for a long time. That's a longevity factor. But they weren't interested in the longevity factor when, in fact, it didn't say WeHire.com or PayLegal.com. They weren't interested in that. They were only interested in the longevity factor once it was – I mean, SSPP is Southside Parking Plaza. They approved that. They didn't ask how long it was going to be up there. Look, this is a clever effort by Melrose. As I understand it, these buildings – I'm a little bit familiar with the area. I don't know the specifics of those buildings, but if my recollection is correct, those buildings are rundown buildings, dilapidated buildings who had no significant use. Your client, you know, got a lease for them, and the city saw this as not the naming of those buildings but a way to advertise in a district where they said, We do not want to see advertising proliferate. Now, what's wrong with that? What constitutionally is wrong with that? What's constitutionally wrong with that is, first of all, they were utilized buildings. For example, the building on Bay Street, at that time Lasix was in there, if you're familiar with the city of Pittsburgh. But what's wrong with that is because they're making the determination based on what is said on the sign. We go right to Menlo Park. Counsel, the district court said that both sides conceded that this was regulation of commercial speech, correct? You conceded that, correct? Your Honor, it is regulation of commercial speech. So she took the four-pronged Central Hudson test, and she said that the city of Pittsburgh, the state, has a substantial interest in not turning its office buildings into billboards that can change from week to week or month to month. So people, we hire nurses one day to eat laced potato chips the next day building. They have an interest in preventing that from happening. What's wrong with that analysis? There's two problems with that analysis, Your Honor. One is it didn't take into consideration the content laden determination of this decision, okay? That's number one. And that brings the barrier out. Under Central Hudson, you can consider the content, correct? Under Central Hudson, it raises a barrier if it's not contextual. And Raul's contextual. That was an objective standard. Don't you need to consider the content in order to determine whether it's proper placement in a context? In order to do the context analysis, don't you have to consider the context? Your Honor, content goes right to the bridge of the First Amendment. Context says this is on-site, this is off-site. Even on-site, off-site in Raul was a determination of you can look and say, does this involve a business that's on-site? It has nothing to do with what you're saying. It has nothing to do with whether we like, whether we find we hire nurses crass or we don't like it. It has nothing to do with what we like. Well, I have to look at what it says in order to determine whether it's advertising or not or whether it's simply naming a building. Yeah, but then why are we advertising and you're not permitted to advertise? If your naming right is in this advertising, it's not a naming right. You have Heinz Field, PNC Park, Chevrolet Amphitheater. And always, Chevrolet Amphitheater at Icy Light, it was Icy Light and changed to Chevy Amphitheater within a very short period of time. So the duration wasn't applied in that case. Is this a zoning issue, Mr. Lehman? In other words, advertising like the type of advertising Melrose is trying to do is permissible in certain parts of the city? The naming rights are permissible in all parts of the city. Okay. But the advertising, yeah, the advertising. Advertising. Is the problem that in this zone you cannot advertise? In this zone, you can't have an advertising sign. You can't advertise naming rights. You can't have a name. You can actually in these districts, you can have an advertising sign, but in some of these districts, you can have an advertising sign. In some of these, you can't. But these are not advertising signs. Your red light is on. Mr. Lehman, thank you very much. Very helpful, and we'll get you back on rebuttal. Mr. Baumiller? Thank you. May it please the Court, my name is Lawrence Baumiller from the Pittsburgh Solicitor's Office representing all of the FLEs in this matter. I agree with Mr. Lehman that content does get to the heart of this case. Melrose asserts that the zoning board committed viewpoint discrimination because the board looked at the sign to determine what type of sign it was. Under the case of, well, it's implicit in the metro media, the U.S. Supreme Court case, that municipalities must be able to look at the content of a sign to show what it is. That was a plurality decision, and I believe Judge Becker in Rapa indicated that the Third Circuit had not yet decided whether or not it agreed with the plurality, correct? That is correct. And it's pretty clear, is it not, that the district court should have analyzed this under Rapa and not under Central Hudson, correct? I argued the Rapa and Ryle cases in my brief, and I believe that the direct quote from Rapa is the most appropriate here, where this court stated that, although evaluating whether a sign is an on-site sign does require the state to analyze the content of the sign, the on-site exception does not preclude any particular message for being voiced in any place. It merely establishes the appropriate relationship between the location and the use of an outdoor sign to convey a particular message. And that's exactly what the board did in this case. It looked at the sign to see precisely what the applicant was trying to do, not because it wanted to tell them that they couldn't put WeHireNurses.com or PA legally. Now, what if that building where they had WeHireNurses.com, it was a building that was occupied as a lab of some sort by West Penn AGH? Would that have made the decision different? I don't think so, because in that case that would be almost like a help wanted ad, more or less, rather than an identification ad for the building. If there were a web outfit. Well, but what would be wrong with them identifying that building as a WeHireNurses.com? Well, I mean, that gets to the very tension between the definition of an identification sign and an advertising sign. And I think the board really did struggle with this question in this case when it did announce the four factors that were discussed just a few moments ago where the board was really trying to look to whether there is a bona fide attempt to actually name a structure and to have the general public commit a particular name to a structure versus whether there is subterfuge to go around the advertising requirement. What if the sign had read something like We Hire Nurses Building? And Mr. Lehman and his client were able to show that we're going to keep this is the We Hire Nurses Building, so we're going to call it that for 20 years. Now, would that meet with the board's approval? Well, I don't think that it meets all the factors, but if you look in the appendix at pages 94A and 95A. Well, let's say Melrose owns the building. Well, if they own the building, that gets them a little closer. But in the appendix, it shows on 94A and 95A, it shows drawings of the proposed signs. It may be garish, you know, and it doesn't look pretty, but it says WeHireNurses.com Building. It's going to be there for 20 years, and Melrose owns the building. Is that okay? Well, because there's still the problem that it seems to be advertising, and it's not showing something that's occurring at the particular location. Well, wait a second. How about Heinz Field? How is Heinz Field okay, but my hypothetical is not? Well, that's true. There is definitely a, and that's where Melrose was clever here, I believe. But Melrose named several outfits in its complaint, including Heinz Field, Heinz Hall, PPG Aquarium, Mellon Arena. How about the Coca-Cola Hall? That as well. Why are those okay and my example is not? Well, there are a couple of reasons. Those names are permanent. The name Heinz Field is at least for 30 years. That's one thing. 20 years is not long enough? Well, also these are public destination points. Yeah, you make that argument. Let's say PNC Park. Let's suppose Wells Fargo buys PNC Park tomorrow, and there is no PNC Bank anymore. And Wells Fargo comes before the zoning board and says, we want to change the park to Wells Fargo Park. Well, they would have the right to do that. But isn't, I mean, not to criticize the benevolence of PNC in being a participant in making a state-of-the-art baseball field available, but, you know, in reality, that's good advertising for them. So what's the difference between PNC's logo being up there and WeHireNurses.com being on the building? Well, the big difference is that these signs, and while you do correctly point out that a name can change, is that the signs such as PNC Park, Heinz Field, are not meant to be transitory. They cannot be changed. Well, I just gave you an example how it could be real transitory. Oh, absolutely. But these signs are. Look at the example where the Super Bowl is going to be played. That stadium has been named so many different things, I don't think even the natives can keep it straight. Absolutely. And certainly it's better to have it named PNC Park than the Pirates Park. It would just depress people. But these signs on these type of public destination facilities, the signs themselves are architectural. They cannot just be changed in a flash like the billboards that Melrose put up. What was the real problem with Melrose in this case, with its naming a building WeHireNurses.com? Where did it fail? Well, because if their contention is correct, that you can just name anything, whatever you want to name it, that doesn't stop me from naming my house after my dear neighbor Edgar Schneider, and I could make my house the EdgarSchneider.com house. Every building in the city of Pittsburgh could have a billboard on the side of it naming a business or website. Well, but as long as the message is not misleading and it's not illegal, what's wrong with the message WeHireNurses.com? It's not just the message that's the problem, is it? No, it's not the message itself. It's where it's being placed in the city of Pittsburgh. The city has its advertising sign regulations where the billboards are permitted only in particular zoning districts. And the city has a substantial interest in the aesthetics of the city, and also billboards themselves can be a traffic hazard in some instances, certainly. And I think that there's significance, such as mentioned in the Metro Media case, also in the Supreme Court case of taxpayers for Vincent, state that the city does have a substantial interest in safety and aesthetics. Does the city have an interest in identification signs that have an advertising component? Well, certainly, because if an identification sign did not have an advertising component, there would be no identification signs. Brugger's Bagels or Starbucks wouldn't be able to put a sign outside that said, we're here in this building. It could be called Pittsburgh Field. That doesn't have an advertising, but it's not called Pittsburgh Field. It's called Heinz Field. That's true, and the reason is because these public destination facilities are endowed by these corporations. Perhaps the corporations are not. But the city doesn't get the money. I assume the city doesn't get the money. Well, the Sports and Exhibition Authority is a different entity. You said that the city does have an interest in having identification signs with an advertising component. Well, to an extent that it certainly does help these structures to get built and financed. The city does not own the stadium. It's actually the Stadium Authority and the Sports and Exhibition Authority, which are two creatures of state law, Commonwealth law. And the city does get to appoint some of the board members, but they are a separate entity from the city. So one could say that we have a general interest, but also I think the public at large has an interest in these places being financed, for many reasons, not just for public enjoyment. Let me ask you this question. When the district court evaluated the zoning board's decision, did they articulate the wrong standard? Did the district court, did she articulate the wrong standard under Sandra Hudson? Well, you know, I agree with her results. Yeah, that's not what I asked you. I know you like the results. I asked whether she articulated the wrong standard. Well, before the district court, I relied on the Rapa and Ryle cases, and I believe that those were just sort of a direct conduit to what was really the heart of the matter, which was. So the answer to Judge Fisher's question is yes. Yes. She articulated the wrong standard. I believe so. Had she articulated the correct standard, what should she have said? If Judge Conte and Magistrate Judge Hay had articulated what I believe to be the correct standard, they would have simply stated that the city of Pittsburgh has a problem with limiting the placement of advertising signs within the city, and that the zoning board's decisions in this matter were just a context-sensitive approach looking at the content and stating whether it was appropriate in this particular district. And I really do think that it is that simple. And I think Melrose was very creative here, not just in their applications, but just in some of their arguments before this court. But I would also like to note that Melrose states that, you know, they agree that this is commercial speech before you today. However, they also state that commercial speech is subject to strict scrutiny under the Equal Protection Standard. I have found no cases that state that, even under the central Hudson standard, commercial speech is not entitled to strict scrutiny. Melrose cited a couple of cases in its brief, one being Cochran v. Pinchak. However, that case was a case under the ADA regarding a prisoner who had been denied his walking cane and his talking books, a blind prisoner. Likewise, Melrose also cited the Federal Election Commission versus the Wisconsin Right to Life. And that was a case regarding the extent to which the Bipartisan Campaign Reform Act could place restrictions on pure political speech prior to an election. Those cases just have nothing to do with the issues here today. And I think that we've discussed the points that I did want to make about, oh, I guess just regarding the name Heinz Field. The stadium was named Heinz Field before that sign went up. It was going to be named that regardless of whether the big sign went up on top of Heinz Field. That was just a pure identification sign of what this place was. And all of these, you know, Heinz Field, Mellon Arena, Icy Light Amphitheater, go to the actual use of the building. And while there is a corporate name there, the use of the building there is paramount. And unless this panel has any other questions before me, I'd like to wrap up. Mr. Baumiller, thank you very much. Thank you. Mr. Lehman. Or Mr. Lehman. Mr. Lehman, can I ask you about a point that Mr. Baumiller just made concerning substantial interest. The city has a substantial interest in regulating the place and manner of placing advertising signs. Do you have any disagreement with that? Your Honor, I think the city has an interest. I don't know if it's substantial. And such as in Rao when it was a historic area. And I don't know if it's substantial. And I don't know whether in this particular case, whether if we were to use a Central Hudson example, a Central Hudson test. And I'm not sure that you don't. I'm just thinking that it raises a bar when it's a content related analysis. But I don't think the stated objective is met here. Because there are signs existing on our buildings with building ID names. We are changing the name. We have applied under this case to change the name of the building. The signs on the building already exist. Would your case be a closer case if you had shown that the signs that you put on the buildings were going to be there for a substantial period of time and that those same signs are controlled by a tenant in the building or the owner of the building? That you could show that there's some genuine, legitimate interest in that sign being there and that it wouldn't be moved every two or three months or two or three years? I believe that duration of the sign being there is something that was the only distinction that I think that the district judge was able to, of the distinctions that the zoning board made, that the district judge was able to say was different between ours and, for example, Heinz Field. As to a destination place, as I said, all places are destination places. Heinz Field may be visited 30 times a year by swarms of people, but our building may be visited 365 days a year by 10 people. And also building IDs also operate as landmarks. It is much more helpful in the city for our sign on Bay Street to say, summon an ambulance to the P.A. WeHireNurses.com than it is to Heinz Field. How are you going to summon an ambulance to Heinz Field? And how does Heinz Field help? Mr. Lamy, that is exactly one of the criteria that the board had come up with, which is to establish a publicly recognized destination point. So when you say Heinz Field, many people will say, I'm going to Heinz Field, I'll meet you there. A lot of people in Pittsburgh will know where to go. But if you say, I'll meet you over there at WeHireNurses.com, nobody will know what they're talking about. Well, in fact, that's the point. Is that not a legitimate factor in the board's decision? No, it's not, because all those people that would know Heinz Field would also know to go to the Steeler Stadium. They would all know go to the Steeler Stadium. In fact, more people would know where the Steeler Stadium would be, a sign saying Steeler Stadium, especially out-of-towners, would know. If they're trying to find the Steeler Stadium, then they would, Heinz Field, Heinz Field. If you're from out of town, oh, what the heck, it's Heinz Field. But Steeler Stadium, they know where they're going. And likewise, Pirates Park. There's only one reason to put Heinz in front of that or PNC in front of that or Mellon in front of the arena or Chevrolet in front of an amphitheater. Okay, your red light is on. I'm sorry. Unless we have other questions. Mr. Lehman, thank you very much. Thank you. We appreciate the arguments. It's a very interesting case. The panel will take the case under advisement.